Dear Mr. Austin:
You have requested an opinion of the Attorney General regarding additional compensation to, and advertising practices of, clerks of district courts. Accompanying your request is a memorandum from the Director of your Investigative Division. The following summary of facts is drawn from your submissions:
The District Clerk of Court ("Clerk") produces a weekly publication called the "Clerk's Register." The Clerk sells this publication and deposits the proceeds from the sales in a special account that is being used for personal purposes. The publication was prepared by clerk of court employees using office equipment and postage. The Clerk is responsible for maintaining the information contained in the newspaper as part of his legislatively imposed duties.
Your first question is whether it is permissible for the Clerk to issue this publication containing information that the Clerk is responsible for maintaining as part of his official duties, and to retain the proceeds from the sale of the publication for personal use.
The Public Records law appears to allow a clerk of court, as custodian of the records, to provide copies to persons so requesting and to collect reasonable fees for same. See LSA-R.S. 44:32(C). If the Clerk is disseminating public records information in a newspaper to persons frequently requesting it and charging reasonable fees for copies, this action appears to be within the ambit of the Public Records Law. However, the Clerk's annual compensation is fixed by law in LSA-R.S. 13:761
and 782. Any compensation the Clerk receives in excess of that set by statute, including fees generated by the distribution of the newspaper in question, should not be diverted for personal gain, but rather should be used for operations of the Office.
Your second question regards the same publication and asks if the Clerk's employees and equipment had not been used, would it be proper for the Clerk to distribute the publication for personal gain.
It is the opinion of this office that, regardless of whether the Clerk uses personnel and equipment belonging to the office in the publication of the newspaper, receiving fees for personal use in excess of his statutory compensation is legally impermissible. It is not the publication of the newspaper containing information the Clerk is responsible for maintaining as part of his official duties, but rather the personal gain above the maximum compensation allowed by law that is inappropriate.
You ask whether the Clerk's personal use of the fees derived from the publication of the newspaper violates any criminal or civil laws. With regard to criminal acts, we believe it would be more suitable that the appropriate district attorney address your questions. Therefore, we recommend that you contact the district attorney re possible violations of criminal statutes.
LSA-R.S. 42:1461 imposes a personal obligation on all public officials and employees, including clerks of court, not to misapply, convert, etc., any funds or property under the custody or control of the public entity in which the office or employment is held. The breach of this obligation gives rise to an action in favor of the public entity for the recovery of such funds or property.
Further, the above activity may be in violation of our Code of Governmental Ethics. Enclosed is a copy of Advisory Opinion No. 91-037, issued on June 28, 1991, by the Board of Ethics for Elected Officials (the "Board"). You may wish to submit the factual scenario involving these activities to the Board for its review.
You next state that it has been alleged that the Clerk placed books of poems paid for with public funds in hospitals located within the parish. The books contain an inscription informing the reader that the Clerk and his staff are responsible for its being placed in the hospital. The inscription contains the Clerk's name.
You question the propriety of such action and state that you believe the expenditure to be in violation of LSA-R.S.43:111.1.
LSA-R.S. 43:111.1 provides as follows:
 "No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties."
Attorney General Opinion No. 90-126A, contains a notable discussion of advertising. This opinion states that a legal distinction must be made between lawful public information and unlawful public relations, a distinction which is well-settled in Louisiana law. The opinion also points out that the Attorney General adopts the distinction stated in the Louisiana Constitution, as interpreted and explained by Godwin v. East Baton Rouge Parish, 372 So.2d 1060 (La.App. 1 Cir. 1979). The distinction was also adopted for general application to this issue without limitation to the election campaigns in Godwin.
That case provides the legal basis for the interpretation expressed in Opinion No. 90-126A that the use of public funds to finance public techniques to manipulate public opinion or public issues to create a body of public opinion favorable to a public official or entity, is ultra vires. The use of public funds to provide a public information function of a state office is integral to its constitutional and/or statutory power and function and is lawful if its intent is to be factually informative to the public. The public information function recognized as lawful is consistent with democratic values and essential to conformation to them by the government. Fact-based information disseminated to the public fosters public trust, and facilitates public respect for government.
That opinion also points out that the expenditure of public funds for fact-based information is not unlawful per se. It is the purpose for which the public funds are spent, and the intent of the public official who makes the expenditure which control the legal character of the expenditure.
Initially, there is a question as to whether the publication with inscription constitutes an advertisement. This office has previously construed the term "advertisement" to mean a public notice which is usually published in the mass media or broadcast over the air. See Attorney General Opinion Nos. 92-484 and 83-57. We have no indication of how many books were placed in the various hospitals. However, the publication in question, does not appear to have been disseminated to the public, generally, through newspapers, radio, or television. Hence, we conclude it is not an "advertisement" as that term is used in LSA-R.S. 43:111.1. We now focus upon the applicability of Article VII, § 14 of the Louisiana Constitution of 1974 on this issue.
Article VII, § 14(A) of the Louisiana Constitution (1974) provides the following with regard to public funds:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
The Supreme Court, adopting the jurisprudence interpreting an identical provision of the 1921 Constitution, has interpreted La. Const. Art. VII, § 14 (1974) to be violated "whenever the State or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." City of Port Allen v. Louisiana Risk Management, Inc., et al.,439 So.2d 399, 401 (La. 1983)
This requirement of a legal obligation to expend funds is the threshold but not the only predicate for the constitutionality of the expenditure. The expenditure must also be for a public purpose and create a public benefit proportionate to the cost. A public purpose and benefit is always presumed where the legal obligation to expend the funds is established by constitutional or statutory mandate. To enjoy this presumption, the legal authorization must be an obligation or public duty authorized by law. In other words, the purpose and power for the expenditure must be sanctioned by laws. The public officer or entity acts as an instrument of the law, and pursuant to the authority granted by law, rather than his or its perception of the public good.
To allow unrestricted expenditures of public funds by any and all political subdivisions, public agencies, entities or officers as long as those entities or persons can imagine some species of "public good" or "public benefit" resulting therefrom, would be to authorize a fragmentation and incoherence in fiscal policy at all levels of state government. This, Art. VII, § 14 seeks to prevent by requiring valid legal authority (even at the contractual level) for all alienation of public funds.
The effect of Art. VII, § 14, as interpreted by the Supreme Court and the Attorney General, is to give further constitutional protection and definition to the plenary power of the legislature over the public fisc, and to insure that political subdivisions conform to statewide general fiscal policy rather than formulate it on the basis of local expediency within their own territorial jurisdictions. The integrity of the constitutional power over the public fisc is, therefore, sustained by a statewide constitutional norm requiring a legal obligation for public expenditures that is either ordained by law, by the legislature or constitution, or authorized (i.e. power to contract) by the same source of law.
This office is unaware of any constitutional or statutory provisions which obligate the Clerk to distribute books of poems bearing an inscription containing his name to parish hospitals.
Although the Clerk's goals may be admirable and creative, the distribution of the publication constitutes a violation of Article VII, § 14. Further, we are of the opinion that the publication is more aligned to the concept of prohibited public relations rather than mere public information. This conclusion is consistent with those expressed in Attorney General Opinion Nos. 92-494, 92-204 and 77-933.
You further allege that the Clerk is the sponsor of a radio broadcast relating to sports and environment which is paid for from public funds. You question the propriety of this activity.
We are of the opinion that if the Clerk is identified by name during the course of the radio broadcast, LSA-R.S. 43:111.1
has been violated. Unlike the book of poems, the radio broadcast falls within the definition of "advertisement" as that term is used in Section 111.1. Further, and even in the absence of the Clerk's name, the expenditure of public funds for this purpose constitutes a violation of Article VII, § 14 for the same reasons discussed in answer to your previous question. See also Attorney General Opinion Nos. 92-737, 76-713, 75-1111, and 75-589.
You finally allege that the Clerk spends time researching oil and gas records for an oil company during office hours and receives compensation, in addition to his statutory salary, from the company. You question the propriety of this transaction.
We believe the same analysis applies to this question as applied to your first question regarding the weekly publication. Thus, we reach the same conclusion.
Trusting the above answers adequately respond to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI:REH, III:jv/214n Enclosure